IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY DON MOSLEY, | § | |
| TDCJ No. 1970234, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:18-cv-2418-G-BN |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

After "[a] thirteen year old girl informed her mother that [Petitioner Larry Don Mosely] had sexually molested her when she visited him in Dallas," Mosely "was indicted for, and a jury convicted him of, the second degree felony offense of indecency with a child," and, because "the indictment alleged a prior conviction for sexual assault of a child, [Mosley] was automatically sentenced to life imprisonment." *Mosley v. State*, No. 05-15-00010-CR, 2016 WL 347137, at *1 (Tex. App. – Dallas Jan. 28, 2016, pet. ref'd), *aff'g as reformed State v. Mosley*, No. F13-71324-I (Crim. Dist. Ct. No. 2, Dallas Cnty., Tex. Dec. 3, 2014).

After his criminal judgment was affirmed as reformed on direct appeal, the Texas Court of Criminal Appeals (the CCA) refused Mosley's petition for discretionary review. *See Mosley v. State*, PD-0159-16 (Tex. Crim. App. June 29, 2016). And the CCA denied Mosely's state habeas application without written order on the findings of the trial court without a hearing. *See Ex parte Mosley*, WR-87,611-01 & -02 (Tex. Crim. App. June 6, 2018).

Mosley then filed a *pro se* 28 U.S.C. § 2254 habeas petition [Dkt. No. 3] on August 29, 2018, the date on which he certifies that he placed the petition in the prison mailing system, *see id.* at 10; *see also* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities."). Through his timely petition, Mosley claims that his trial and appellate counsel were constitutionally ineffective, that the trial court erred, and that he is actually innocent.

Senior United States District Judge A. Joe Fish has referred Mosely's case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. The State responded to the habeas application. *See* Dkt. No. 12. And Mosley replied. *See* Dkt. No. 19.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682

(citation omitted).

This is because, "[u]nder AEDPA, state courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, ___ S. Ct. ____, No. 19-1302, 2020 WL 7327827, at *8 (Dec. 14, 2020) (per curiam). So, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute therefore "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court." *Shinn*, 2020 WL 7327827, at *1 (citation omitted). In sum, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies "beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"Under § 2254(d), that is "'the only question that matters.'"" *Id.* at *8 (quoting *Richter*, 562 U.S. at 102); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019)

("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"). And nothing "in AEDPA or [the Supreme] Court's precedents permit[s] reduced deference to merits decisions of lower state courts." *Shinn*, 2020 WL 7327827, at *5 n.2 (citing 28 U.S.C. § 2254).

Starting with Section 2254(d)(1), a state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably

extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

As noted above, "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule

application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination…. In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an

unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

Mosley brings 31 separate grounds for relief. In 28 of these, he alleges that his Sixth Amendment right to effective assistance of counsel was violated at trial and on appeal. Mosely also argues that the trial court erred for two reasons and asserts that he is actually innocent.

I.    Actual Innocence

Insofar as Mosley brings a stand-alone, substantive claim of "actual innocence," such a claim is not recognized as an independent ground for federal habeas relief and should therefore be denied. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993))); *see also, e.g.*, *House v. Bell*, 547 U.S. 518, 554-55 (2006); *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014); *cf. Schlup v. Delo*, 513 U.S. 298, 314 (1995) (distinguishing "procedural" claims of innocence, which are based on a separate, underlying claim that a defendant was denied "the panoply of protections afforded to criminal defendants by the Constitution").

II.    Trial Court Error

Mosely asserts that the trial court erred when it prevented his counsel from using Facebook messages for impeachment and when it allowed the prosecution to impede the discovery of CPS records.

His first claim is conclusory, in that, while the trial court sustained the prosecutor's objection to his counsel's attempt to introduce Facebook messages, Mosley fails to explain why the court's decision was incorrect. *See* Dkt. No. 12-1 at 22-30. And federal courts do not review state court evidentiary rulings under Section 2254 unless those rulings "rise to the level of a constitutional violation," which only occurs when a "ruling is so egregious that it renders the petitioner's trial fundamentally unfair." *Battles v. Stephens*, Civ. A. No. V-15-041, 2016 WL 1357912, at *2 (S.D. Tex. Jan. 27, 2016) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Fuller v. Johnson*, 114 F.3d 491, 498 (5th Cir. 1997); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005)), *rec. adopted*, 2016 WL 1367296 (S.D. Tex. Apr. 5, 2016); *see also Nelson v. Thaler*, No. 3:06-cv-1562-M-BH, 2010 WL 4629988, at *13 (N.D. Tex. July 31, 2010) ("[F]ederal courts 'do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding' in habeas actions." (quoting *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999))), *rec. accepted*, 2010 WL 4627717 (N.D. Tex. Nov. 2, 2010). As to this ground, Mosley fails to show that the trial court's ruling was error, much less a constitutional violation that deprived him of a fair proceeding. He has therefore failed to show that the CCA's denial of this claim was unreasonable.

Mosely's second claim of trial court is controverted by his counsel's affidavit indicating that no discovery was withheld. *See* Dkt. No. 11-30 at 9 ("I received CPS records from Texas and demanded those from Oklahoma. The prosecutors stated that they did not have those records. There was no evidence admitted against Mr. Mosley

from any Oklahoma CPS records, if in fact they existed." (citation omitted)). As such, Mosley fails to show that this alleged error rendered his trial fundamentally unfair and has thus fails to show that the CCA's denial of this claim was unreasonable.

III.    Ineffective Assistance of Counsel ("IAC")

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d

746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y,*

*DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."); *cf. Shinn*, 2020 WL 7327827, at *4 ("recogniz[ing] the special importance of the AEDPA framework in cases involving *Strickland* claims," since "[i]neffective-assistance claims can function 'as a way to escape rules of waiver and forfeiture,' and they can drag federal courts into resolving questions of state law" (quoting *Richter*, 562 U.S. at 105)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted).

In sum, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See Richter*, 562 U.S. at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the

case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

Of Mosely's multiple, conclusory IAC claims, three are against his appellate counsel and 25 are against his trial counsel.

As against his appellate counsel, Mosely asserts that he was denied constitutionally effective counsel because counsel failed to raise on appeal, (1) the prosecution's violating a motion in limine, (2) the withholding of CPS records, and (3) discovery issues pertaining to CPS and "DCAC."

But, taking up first the 25 IAC claims related to Mosely's trial, these claims can be characterized as either second-guessing trial counsel's decisions related to objecting, investigating, calling or impeaching witnesses, allowing the prosecution to allegedly withhold evidence, or moving to suppress evidence. Mosely's claims are all

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

conclusory in nature, which is reason enough to deny them, as a "conclusory statement alone is insufficient for petitioner to prove the threshold standard to overcome the AEDPA bar and obtain federal habeas relief." *Tuckness v. Davis*, No. 2:16-cv-188-D, 2019 WL 1930038, at *4 (N.D. Tex. Mar. 22, 2019) (footnote omitted), *rec. adopted*, 2019 WL 1923851 (N.D. Tex. Apr. 30, 2019); *cf. Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001) ("It is clear that Sayre's conclusory speculation about the effect of the unidentified favorable witness' testimony falls far short of the prima facie showing of prejudice necessary for the evidentiary hearing Sayre requests." (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983))).

In considering these claims, the state court obtained an affidavit from Mosely's trial counsel, Angie N'Duka, *see* Dkt. No. 11-30 at 6-11 – an affidavit that it found "to be credible" and based on which it found "that [Mosely's] complaint regarding ineffective assistance are without merit," *id.* at 4. Ms. N'Duke testified in applicable part:

> Ground 1.
> From the records, the statement was made by the prosecutor during a pre-trial hearing and made in response to my discovery request for a copy of the transcript of the grand jury proceedings. I am not sure what the letter by the Dallas County District Attorney's Office dated December 19, 2016, attached as Exh. l is referencing.
> Ground 2.
> This trial was the second trial setting and I had reviewed the discovery, including the media discovery on several occasions, conducted independent investigations with the assistance of the private investigator and was adequately prepared for trial. I did not need a continuance.
> Ground 3.
> I do not have any independent recollection that members of the public being excluded from sitting in during voir dire. I believe that we had 77 veniremen and they occupied all the seats in the courtroom,

including the jury box. I don't recall If Mr. Mosley had family members who wanted to sit in through the voir dire process.

Ground 4.

This ground was addressed to Mr. Mosley's appellate counsel, thus, I am unable to respond to this. Vol. 5, pages 248 and 249 show that I objected to the prosecutor's reference to Mr. Mosley's custody status.

Ground 5.

I reviewed the Child Advocacy forensic interview recording alone and also in the company of the expert appointed to assist me with Mr. Mosley's defense. Further, I was provided and I reviewed CPS records that the prosecution had in their possession.

Ground 6.

Rex Reynolds, an experienced private investigator, was appointed to assist me with defending Mr. Mosley. It was part of my trial strategy not to use Annika Hopkins as a witness.

Ground 7.

The cross examination of the complainant was conducted in accordance with my trial strategy. The issue of the previous accusation was admitted into evidence.

Ground 8.

All of the jurors were qualified to serve from the record it appears that Mr. Flores would have been seated in the jury box during the voir dire process. Juror number 12 was venireman number 52. Those seated in the jury box were veniremen numbers 61 through 77. If Mr. Flores served on the jury, then he must have changed his response during jury selection. However, I believe Mr. Flores was seated in the jury box during voir dire and was not selected to be on the jury.

Ground 9.

The prosecutor's questions during voir dire were appropriate, not misleading and did not preclude defense from mounting challenge for cause of bias to the entire panel.

Ground 10.

Heather Sims was not called to testify as part of the defense trial strategy. There was no evidence that she had information that would impeach the complainant's testimony.

Ground 11.

The prosecution [proffered] photos from Mr. Mosley's cell phone, laptops and cameras using proper protocol and through a qualified witness.

Ground 12.

Based on defense investigation and pretrial conferences with Mr. Mosley, it was part of the defense strategy not to call Ms. Carol Bangs as a witness. The fact that the complainant had accused another of similar offense was brought before the jury during the trial.

- 17 -

Ground 13.

The testimony of the complainant in Vol. 5, pages 18 - 20 do not show any bolstering. I am not sure what Mr. Mosley was referring to in this complaint.

Ground 14.

Defense attempted to introduce Facebook messages into evidence, the State objected and the Court sustained the objection. Vol. 5, pages 73 - 81.

Ground 15.

Vol. 4, page 15 shows that I requested criminal history of all the State's witnesses, If any, in my Motion for Discovery. The prosecutor was under court order from the pre-trial hearing to disclose criminal history of all the witnesses she called to testify.

Ground 16.

Defense did not allow the prosecutors to impede the discovery of CPS records. I received CPS records from Texas and demanded those from Oklahoma. The prosecutors stated that they did not have those records. Vol. 4, pages 16 - 19. There was no evidence admitted against Mr. Mosley from any Oklahoma CPS records, if in fact they existed.

Ground 17.

I received and reviewed records from Texas CPS prior to trial. I requested records from CPS in Oklahoma from the prosecutors because I was unsuccessful in getting them myself just to see If there was a follow up with the Oklahoma CPS office regarding the child. I had no knowledge if such records actually existed. The prosecutors stated that they did not have said records. If those records exist, nothing was used from them against Mr. Mosley.

Ground 18.

I believe I had full disclosure of the evidence, including electronic evidence. I reviewed all the discovery prior to trial and during trial. Defense was not precluded from mounting a defense.

Ground 19.

Contradictory testimony was made the basis of cross-examination and impeachment of the witness who gave contradictory testimony. Vol 5 page 27 reflects direct examination of complainant about their outing to Hurricane Harbor. That page does not show any contradictory testimony.

Ground 20.

I objected to the direct examination of this witness. The responses to the objected questions were not harmful to Mr. Mosley. Thus, it was part of my trial strategy to let the answers into the record.

[Ground] 21.

Vol 6, pages 18, 20, and 21 contain excerpts from the prosecutor's final argument wherein he stated amongst others, that the attorneys'

questions and arguments do not constitute evidence. Evidence came from the witness stand.

Ground 22.

Vol 4, page 74 contains the prosecutor's voir dire questioning of a prospective juror about the need for more evidence other than just the testimony of one witness. This did not preclude the defense from challenging the juror for cause, if need be. This voir dire hypothetical was not misleading.

Ground 23.

I reviewed the forensic reports and videos prior to the trial. The substance of the interview was testified to by the State witness and was cross examined vigorously by the defense.

Ground 24.

Defense was not deprived of time during the voir dire process. The fact that the Judge did not give me a warning did not deprive me of my time to complete voir dire. The fact that there was a break during voir dire did not deprive the defense of any time. Further, the fact that the Judge did not give the defense a time warning did not deprive the defense of any time. Voir dire was conducted in accordance with defense trial strategy. Defense would have requested additional time, if it was needed.

Ground 25.

Defense had requested and judge appointed an expert to assist the defense in preparing for trial. A private investigator was also appointed to assist the defense. These two did a thorough job. If additional funds were required, defense would have requested and most likely been approved since Mr. Mosley was found to be indigent. These two individuals did not testify pursuant to the defense trial strategy.

Ground 26.

Prosecutor's statement that proof beyond a reasonable doubt was a higher burden than those of the preponderance of the evidence and clear and convincing evidence standards was a correct statement of the law.

Ground 27.

All evidence was admitted in accordance with the rules of evidence. I adhered to my trial strategy in the defense of Mr. Mosley.

*Id.* at 6-11.

Applying the deferential *Strickland* standards through the deferential lens of AEPDA to these findings, made after obtaining uncontroverted sworn testimony, which the state court found to be credible, Mosely has not shown through his own

- 19 -

conclusory assertions that the CCA's denial of the trial-related IAC claims amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also, e.g.*, *Rhodes*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

Mosely's claims of IAC on appeal fare no better. Again, Mosely second-guesses his counsel's decisions – this time, which issues to raise on appeal.

The Supreme Court "has indicated that although 'it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, ... it is difficult to demonstrate that counsel was incompetent.'" *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007) (per curiam) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). And, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986); internal quotation marks omitted); *see also Varga v. Quarterman*, 321 F. App'x 390, 396 (5th Cir. 2009) (per curiam) ("In *Gray*, the Seventh Circuit further held that if appellate counsel 'failed to raise a significant and obvious issue, the failure could be viewed as deficient performance' and that if the issue that was not raised 'may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial.'" (quoting *Gray*, 800 F.2d at 646)).

Here, Mosely fails to explain how the issues he believes that counsel should have raised on appeal are stronger than the two issues that were raised or otherwise

explain how counsel's failure to raise these grounds was a significant and obvious error and, had they been raised, it would have resulted in a reversal. For example, the record does not show that an in limine order was obtained concerning references to Mosely's incarceration. *See, e.g.*, Dkt. No. 11-6 at 20-24. And, as explained above, no CPS records were withheld. *See* Dkt. No. 11-30 at 9. Mosely has therefore not shown that the CCA's denial of these IAC claims amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza*, 738 F.3d at 680.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 17, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE